USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/8/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
In re:

SAMUEL STEINBERG,

                              Debtor.

------------------------------------------------------- X

DAVID JAROSLAWICZ, et al.,

                              Appellants,

                        -against-

SAMUEL STEINBERG,

                              Appellee.

------------------------------------------------------- X

17 Civ. 4724 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Appellants David Jaroslawicz, David Walker, Howard Freund, Neil Herskowitz, Phil Lifschitz and Abraham Elias appeal the Bankruptcy Court's Opinion and Order ("Opinion") discharging Appellee Samuel Steinberg's alleged debts following this Court's remand for further proceedings with respect to Appellants' 11 U.S.C. § 727(a)(3) claim. Appellants' motion is denied, and the Bankruptcy Court's decision is affirmed.

**I.    BACKGROUND**

Some familiarity with the facts and procedural history is assumed. A more detailed explication of the facts is included in the Court's previous Opinion and Order, *In re Steinberg*, No. 16 Civ. 4074, 2017 WL 1184314 (S.D.N.Y. Mar. 29, 2017).

### A. The Romanian Real Estate Venture

This case arises out of an oral agreement between Steinberg and Jaroslawicz, friends who in 2006 agreed to invest as "fifty-fifty partners" in Romanian real estate. Steinberg was "the man on the ground" in Romania. In 2006, he formed three limited liability companies under Romanian law, referred to as the Romusa LLCs. Steinberg and Jaroslawicz co-owned the Romusa LLCs. According to Steinberg, the venture's real estate transactions were conducted through the Romusa LLCs, and "most of the money came and was sent through [Steinberg's] personal account in Egnatia Bank, Marfin Bank in Romania."

Throughout the venture, Jaroslawicz solicited investments from other parties, including Appellants. These investors provided funds to Jaroslawicz who sent the money to Steinberg. Jaroslawicz did not enter into a written agreement with the outside investors. Some of these "side deals" may have altered Steinberg and Jaroslawicz's agreement to split the profits equally.

In June 2013, Steinberg commenced Romanian insolvency proceedings for each of the Romusa LLCs. Steinberg testified that he turned over the accounting files for the Romusa LLCs to a judicial administrator when he filed for insolvency and did not retain any copies of these files.

### B. Procedural History

In March 2014, Appellants filed an involuntary petition for relief against Steinberg under Chapter 7 of the U.S. Bankruptcy Code. *See* 11 U.S.C. § 303(b). In December 2014, Appellants initiated an adversary proceeding, objecting to the dischargeability of debts they alleged Steinberg owed to Jaroslawicz, Herskowitz and Lifschitz. Appellants objected pursuant to 11 U.S.C. § 523(a)'s discharge exemption for (1) debts obtained by "false pretenses, a false representation, or actual fraud," § 523(a)(2)(A), and (2) debts acquired through "embezzlement,"

2

§ 523(a)(4). In addition, Appellants -- including Walker and Elias, who, unlike the other Appellants, were judgment creditors of Steinberg -- objected to Steinberg's general discharge on the grounds that he failed to preserve records under 11 U.S.C. § 727(a)(3). In January 2015, Steinberg asserted a counterclaim for indemnification against Jaroslawicz based on Jaroslawicz's executing four powers of attorney running to Steinberg in connection with the Romanian properties.

The Bankruptcy Court held a four-day trial in December 2015. Five witnesses testified: Steinberg, Steinberg's wife, Jaroslawicz, Herskowitz and Lifschitz. In March 2016, the Bankruptcy Court issued a 45-page Opinion, which included findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Bankruptcy Court held that Appellants failed to carry their burden to show that the exemptions to discharge applied and dismissed Appellants' Complaint with prejudice. It also held that Steinberg was not entitled to indemnification and dismissed his counterclaim with prejudice. Both parties appealed.

In an Opinion and Order dated March 29, 2017, this Court affirmed the Bankruptcy Court's judgment, except with respect to Appellants' claim pursuant to § 727(a)(3) and Steinberg's crossclaim for indemnification, which the Court vacated and remanded for further proceedings. With respect to the § 727(a)(3) claim, the Court held that the Bankruptcy Court's analysis, which assessed only whether Steinberg's financial condition could be ascertained from the documentation Steinberg produced, was incomplete because it did not address whether Steinberg had maintained adequate records as to business transactions for a reasonable period of time before the bankruptcy proceeding was commenced.

On remand, the Bankruptcy Court, in a reasoned Opinion, dismissed Appellants' claim under § 727(a)(3) because "[Appellants] failed to carry their initial burden of showing that

3

Steinberg failed to keep and preserve books or records from which Steinberg's financial condition or business transactions might be ascertained." The Bankruptcy Court also dismissed Steinberg's crossclaim for common law indemnification. The Bankruptcy Court's dismissal of Appellants' § 727(a)(3) claim is the only issue before this Court on appeal.

## II. STANDARD

When reviewing a bankruptcy court's decision, the district court reviews factual findings for clear error and legal conclusions de novo. *In re Charter Comm'ns, Inc.*, 691 F.3d 476, 483 (2d Cir. 2012). "A factual finding is not clearly erroneous unless the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CBI Holding Co.*, 529 F.3d 432, 449 (2d Cir. 2008) (internal quotation marks omitted). "[I]f the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety," a reviewing court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *In re Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016) (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 372 (2d Cir. 2015) (internal quotation marks omitted).

## III. DISCUSSION

Appellants argue that Steinberg should be denied a discharge under § 727(a)(3) because he failed to preserve books and records from which his financial condition and material business transactions could be ascertained. The Bankruptcy Court rejected this argument, finding that "the records that Steinberg did produce were sufficient to ascertain his financial condition, evaluate the Romanian business transactions, and ascertain the inflow and outflow of funds," and

4

therefore that "[Appellants] have failed to carry their burden to establish that Steinberg should be denied a discharge under section 727(a)(3)." The Bankruptcy Court's decision is affirmed.

Section 727(a)(3) states:

The court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3). The denial of discharge under § 727(a)(3) is "an extreme penalty for wrongdoing, which must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Kran*, 760 F.3d 206, 210 (2d Cir. 2014) (internal quotation marks omitted).

"In a proceeding under section 727(a)(3), the initial burden lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition . . . might be ascertained." *Id.* at 210 (internal quotation marks and alterations omitted). "[T]he inquiry into the debtor's financial condition is limited to the span from a reasonable period of time before the bankruptcy filing through the pendency of the bankruptcy proceedings." *Id*. "[A]lthough [Section] 727(a)(3) focuses on records relating to the debtor's personal financial affairs, his failure to keep adequate financial records regarding the business transactions of a closely held corporation that are necessary to determine his personal financial affairs may result in the denial of a discharge." *In re Gormally*, 550 B.R. 27, 49 (Bankr. S.D.N.Y. 2016) (quoting *In re White*, No. 12 Civ. 11847, 2015 WL 9274771, at *3 (Bankr. S.D.N.Y. Dec. 18, 2015)). "If the creditor shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *In re Cacioli*, 463 F.3d 229, 235 (2d Cir. 2006).

5

Appellants argue that "[i]t is impossible to ascertain what financial transactions Steinberg did (or did not) handle on behalf of the Romanian venture, or to ascertain his financial condition," because Steinberg failed to preserve "accounting files and source documents," failed to account for cash transactions, limited his disclosures to only twelve "major" land transactions and failed to account for eight years of expenses.

The Bankruptcy Court concluded that Appellants did not meet their burden to show that Steinberg failed to preserve business records from which his financial condition and material business transactions could be ascertained. This finding was not clearly erroneous. The Bankruptcy Court cited to "the very substantial volume of probative evidence that Steinberg provided to Plaintiffs during the bankruptcy case and in this adversary proceeding." In addition to eight years of joint tax returns, bank account statements and credit card statements, which the Bankruptcy Court previously found sufficient to assess Steinberg's financial condition, the Bankruptcy Court cited to the following evidence of Steinberg's financial condition and business transactions:

- domestic banking statements with his wife from HSBC Bank from 2006–2013;
- contact information of his former counsel who conducted the closing [of the] sale of Steinberg's residence in July 2005;
- credit card statements from 2006–2013;
- loan history summaries, promissory notes, creditor pledge agreements and facsimiles of a certificate of deposit held by HSBC bank of Steinberg's former company "SSII," whose credit line Steinberg used to fund approximately $2,000,000 of investments made to the Romanian limited liability companies from 2006–2007; and
- bank account statements from Marfin Bank of Romania on the accounts of each of the Romanian limited liability companies, from 2006–2011[.]

The Bankruptcy Court also noted that Appellants marked as trial exhibits but never introduced various bank records of Steinberg and the Romusa LLCs, and that Steinberg produced a 43-page land transaction chart "identif[ying] each [land] transaction, the sources of funds for purchase, the itemized costs in each transaction, and the properties to which such funding was expended."

6

According to the land transaction chart, the last funds into the Romanian real estate venture came from a $650,000 loan to Steinberg from his father-in-law on December 5, 2008, more than five years before the involuntary Chapter 7 petition was filed in March 2014. Altogether, Steinberg produced to Appellants 1,494 pages of detailed business records, including source documents.

Based primarily on these records, as well as Steinberg's credible "trial testimony about his business records and the financial transactions he engaged in on behalf of the Romusa entities," the Bankruptcy Court held that "[Appellants] failed to carry their initial burden of showing that Steinberg failed to keep and preserve books or records from which Steinberg's financial condition or business transactions might be ascertained . . . during the pendency of the bankruptcy case . . . or for a reasonable time before." This conclusion is well supported by the record. "[T]he law . . . does not require that [the debtor's books and records] be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances." *In re Sethi*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000) (quoting *In re Underhill*, 82 F.2d 258, 259–60 (2d Cir. 1936)).

Appellants argue that Steinberg failed to preserve records of "non-major" transactions (i.e., those transactions not included in Steinberg's land transaction chart), including an unspecified number of "unknown and untraceable cash transactions." Appellants point to Steinberg's characterization of the land transaction chart as encompassing the "12 major transactions conducted in this venture," asserting that "[t]his clearly indicates that there were other or 'non-major' transactions which remain unknown . . . ." Appellants also cite to a portion of Mrs. Steinberg's testimony, in which she stated that "[t]he bags of money went to the farmers. They didn't come home to me. It was the farmers didn't want their pay in check. They kind of wanted it in cash, the first sale, when they were selling land."

Neither Steinberg's use of the description "12 major land transactions" nor Mrs. Steinberg's testimony about cash transactions renders the Bankruptcy Court's finding clearly erroneous. As the Bankruptcy Court explained,

> The Romusa Land Transaction Chart presented: (i) a summary of the *twelve aggregate plots* acquired during the venture, their size, purchase price and total additional costs; (ii) a 32-page itemization of each individual parcel purchased, the costs for each parcel, and the source and amount of funding for each purchase; and (iii) a three page chart showing the funding contributed under Jaroslawicz's name and the funding attributed to Steinberg" (emphasis added and internal citations omitted).

First, Appellants' assertion that the land transaction chart is incomplete is entirely speculative. The characterization of the venture's land transactions as "major" may simply signify that all of the transactions were major. Steinberg testified that the land transaction chart is "a very detailed . . . list of *all* transactions, amounts, dates, with regards to all the assets that were purchased under the Romusa companies" (emphasis added). The Bankruptcy Court was entitled to credit Steinberg's testimony in support of its finding "that Steinberg maintained and produced financial records to Plaintiffs that included Steinberg's 'business transactions,' specifically for the Romousa entities . . . ." *See UFCW Local One Pension Fund*, 791 F.3d at 372 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (internal quotation marks omitted)).

Second, with respect to the allegedly unaccounted for cash transactions, the Bankruptcy Court was entitled to credit Steinberg's testimony that more than ninety-five percent of all transactions were accomplished by wire -- not cash -- and that where individual parcels were purchased from farmers who did not have bank accounts, notaries were retained to travel to those farmers to execute the land sale contracts that he provided to Appellants. These wire transactions are included in the business records and bank statements that Steinberg produced. Even assuming that some small number of transactions are not reflected in the documents

Steinberg produced, Appellants have failed to satisfy their burden of showing that such transactions are necessary to ascertain material business transactions for the Romusa LLCs during the pendency of the bankruptcy proceedings and for a reasonable period before they commenced. *See In re Kran*, 760 F.3d at 210.

Steinberg further testified that he produced land sale contracts and mortgages (that Jaroslawicz admitted to signing) for each transaction and generated land reports itemizing each payment, and further, that each payment could be cross-referenced with bank statements from his personal business account. *Compare with In re Singh*, 568 B.R. 187, 199 (Bankr. E.D.N.Y. 2017) (denying discharge where the debtor failed to disclose his one-third interest in a cash business and produced only his federal tax returns and one year of monthly bank statements but no cash ledger or other recordation of cash receipts and expenses). The Bankruptcy Court was entitled to credit this testimony and therefore to conclude that Steinberg preserved adequate records of material business transactions. *See In re Sethi*, 250 B.R. at 838 ("It is up to the bankruptcy court's broad discretion to determine on a case by case basis whether the records produced by the debtor are sufficient.").

Appellants further argue that Steinberg failed to preserve records of his expenses incurred while he was running the Romanian real estate venture. This argument does not render clearly erroneous the Bankruptcy Court's finding that Steinberg produced sufficient documentation such that his financial condition could be ascertained. The Bankruptcy Court cited to the "substantial financial information" Steinberg provided, including eight years of joint tax returns, bank account statements and credit card statements. Based on these records, and Steinberg's testimony that any expenses incurred were reflected in his credit card and bank statements, or were paid for by his wife, the Bankruptcy Court found that Appellants failed to carry their

burden under § 727(a)(3). "[B]ank and credit card statements . . . 'form the core of what is necessary to ascertain the debtor's financial condition.'" *In re Henderson*, 423 B.R. 598, 617 (Bankr. N.D.N.Y. 2010) (quoting *In re Nemes*, 323 B.R. 316, 324 (Bankr. E.D.N.Y. 2005)). As the Bankruptcy Court's finding has ample support in the record, its judgment is affirmed notwithstanding Appellants' speculation that Steinberg's expenses are "missing." To the extent that any records of Steinberg's expenses are missing, Appellants have not "met [their] burden to show that the missing records [are] necessary to ascertain" Steinberg's financial condition during the relevant period. *In re Kran*, 760 F.3d at 210; *see also In re Sethi*, 250 B.R. at 838 (explaining that "the debtor is not required to keep an impeccable system of bookkeeping or records so complete that he can satisfy an expert in business"; "the test is whether . . . the debtor's . . . financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy").

Appellants rely on *In re Gormally* for the proposition that "the focus [of the impossibility inquiry] is on the documents that have not been provided by the debtor and whether it would be unduly burdensome or impossible to ascertain the debtor's financial condition or material business transactions without them." 550 B.R. 27, 49 (Bankr. S.D.N.Y. 2016) (internal quotation marks omitted). Their reliance is misplaced. Under the first step of the Second Circuit's two-step approach, "[t]he Court asks whether there is available written evidence made and preserved from which the debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy." *In re Singh*, 568 B.R. at 199. The Bankruptcy Court reasonably found that Appellants failed to meet their burden of proving that Steinberg failed to preserve books and records, and additionally, that the records Steinberg did produce were sufficient to ascertain his financial

10

condition and material business transactions. Appellants' insistence that the documents in their possession are incomplete, and that it is impossible for them "to trace or verify Steinberg's business transactions" is not supported by the record, when viewed in its entirety. To the contrary, as the Bankruptcy Court noted, much of the information that Appellants claim not to have was in Appellants possession but not introduced at trial, including about the Romanian real estate venture.

Appellants' argument that the Bankruptcy Court impermissibly relied on Steinberg's oral testimony and documents not in evidence likewise is without merit. Although a debtor who has failed to preserve books and records "may not, by oral testimony, supplement that information which is absent from the actual records," *In re Sethi*, 250 B.R. at 839, here, the Bankruptcy Court found that Steinberg preserved sufficient books and records. This finding is supported by the record.

Because the Court affirms the Bankruptcy Court's decision that Steinberg preserved adequate books and records, this Opinion does not address Appellants' argument that Steinberg's purported failure to preserve books and records was not justified.

## IV. CONCLUSION

The judgment of the Bankruptcy Court is **AFFIRMED**. The Clerk of Court is directed to close the case.

Dated: March 8, 2018
      New York, New York

                                       LORNA G. SCHOFIELD
                                UNITED STATES DISTRICT JUDGE